RECEIVED
MAY 24 2006
CLERK, U.S. DISTRICT COURT
ANCHORAGE, ALASKA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| EXOUSIA, INC, d/b/a MAVRIK AIRE ) | |
| ) | |
| Appellant, ) | |
| ) | |
| vs. ) | |
| ) | CASE NO. AO5-0121CR (JWS) |
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| Appellee ) | |
| ) | |

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA
MAGISTRATE JUDGE JOHN D. ROBERTS PRESIDING**

**REPLY BRIEF OF APPELLANT**

Charles Winegarden, ABA #8506089
100 Trading Bay Dr., Suite 8
Kenai, Alaska 99611
(907) 283-5774

Filed in the United States District
Court for the District of Alaska
this ___ day of May, 2006.

## ARGUMENT

1. **The Evidence is Insufficient to Convict Exousia**

This case revolves around the State of Alaska hunting regulation 5 AAC 92.540(9)(A)(i), which restricts the use of aircraft for transportation of big game hunters in a portion of the Noatak Preserve denoted as the Noatak Controlled Use Area (CUA) during a proscribed time period. The boundaries of the CUA are described in 5 AAC 92.540(9)(A)(i) as follows:

> (i) the area consists of that portion of Unit 23 in a corridor extending five miles on either side of, and including the Noatak River, including the river, beginning at the mouth of the Noatak River, and extending upstream to the mouth of Sapun Creek.

The authorizing agency, Alaska Department of Fish and Game, offers two additional items regarding the CUA. Exhibit 2 is a map located on the State of Alaska Web Site illustrating the CUA. Exhibit 15-7 is a map contained in the State of Alaska Hunting Regulations handbook effective on the date of the incident. According to the legends on each map, the line that forms the eastern boundary of the CUA extends for a distance of at least 10 miles and bisects the Noatak River. Exhibit 15-7 demonstrates that Sapun Creek flows into only one side of the Noatak River. Therefore, the mouth of Sapun Creek, named in the regulation as the upstream boundary, is merely one point of the eastern boundary of the CUA. The regulation itself is silent as to the far eastern boundary of the CUA.

Comparison of the two maps clearly establishes a discrepancy in the depiction of the eastern boundary regarding the angle at which the ten mile eastern boundary intersects the Noatak River. The regulation gives no guidance on this issue. The court

1

noted the inconsistency (Mem. Op. 5-6), but erroneously failed to assign the proper weight to the inconsistency. In fact, the inconsistency portrayed on the State maps in conjunction with the absence of any guidance from the regulation itself establishes reasonable doubt as to the exact location of the eastern boundary.

"A federal court does not have jurisdiction to authoritatively construe a state statute." *Florida Businessmen For Fee Enterprise v. State of Florida,* (1980) 499 F. Supp. 346 @ 352, citing *United States v. Thirty-Seven Photographs,* 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971). Because the regulation in question is a state regulation, it is incumbent that enforcement of the regulation follow the guidelines of the Alaska state agency under whose authority the regulation was promulgated. The prosecution produced no witnesses from the State of Alaska to testify concerning the location of the mouth of Sapun Creek nor to testify as to the exact location of the entire eastern boundary. Two divergent illustrations on the State maps depicting the eastern boundary show contradictory angles of the boundary and leave the door open to at least two equally logical interpretations. Minus authoritative data, which the prosecution failed to produce, the evidence in this case is insufficient to meet the standards of proof required to eliminate reasonable doubt.

2. **The State regulation is void for vagueness.**

The Fourteenth Amendment's guarantee of Due Process contained in both the United States Constitution and the Alaska Constitution prohibits vague statutes. As set out in *Florida Businessmen For Fee Enterprise v. State of Florida*, supra:

> **It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly**

> **defined.** Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. **Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.** *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222, 227 (1972). *Florida Businessmen For Fee Enterprise v. State of Florida* @351

The Alaska regulation in question fails to adequately define the restricted area created, fails to give adequate notice, and lacks explicit standards regarding enforcement. The regulation is void for vagueness.

### a.   A person of average intelligence cannot determine whether Lake 35 is within or without the CUA

The regulation gives only one point of reference on the ten mile wide eastern boundary of the corridor, which point itself is in question, and remains silent on the corresponding location of the far eastern boundary. More importantly, the State offers two maps delineating two distinct and conflicting angles at which the boundary intercepts the Noatak River. People of ordinary intelligence are thus left to guess at the actual location intended by the State that ends the restricted area and the door is open for arbitrary and discriminating enforcement.

In the matter now before the court, whether or not the lake landed on by Exousia is within or without the corridor is not solely dependant on determining whether the

location of the lake is west of Sapun Creek. The determination of the actual location of the lake with regard to the CUA can only be decided beyond a reasonable doubt by ascertaining the angle at which the eastern boundary bisects the Noatak River as established by a representative of the state agency authorized to make that decision. No such evidence was presented by the prosecution.

"A federal court ruling upon the constitutionality of state statute may only consider the statute's plain meaning and **authoritative state court construction of the statute.**"[1] The inadequacy of using the mouth of a creek, absent additional clarification, to identify a point on the location of a restricted area has been determined by standing Alaska State and 9th Circuit case law to be imperishable and lacking in the certainty requisite of a penal statute.[2] Opening Br. at 12 - 15. The cases cited in Exousia's Opening Brief are directly on point in relation to the regulation in question here and must be taken into consideration as authoritative state construction of the issue in question.

The vagueness of the regulation led to the arbitrary and discriminatory prosecution of the matter by federal agents acting outside the scope of their authority by construing a state regulation. Ranger Mihata arbitrarily chose a point that he determined to be the mouth of Sapun Creek without relying on the definition of the mouth of a creek issued by the Alaska agency authorized to create the regulation. Tr. 1-83  Ranger Mihata's determination was beyond the scope of his authority as a federal

---

[1] *Florida Businessmen, Etc., v. State of FLA.*, (1980) @ 352 quoting *United States v. Thirty-Seven Photographs,* 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822(1971)

[2] *Booth Fisheries Co. v. United States,* 6 F.2d 500 (9th Cir. 1925); *United States v. Peck,* 13 Alaska 213 (1951) 95 F.Supp. 465 (1951)

4

agent dealing with a state regulation. Ranger Mihata arbitrarily determined that he need not determine the entire line of the eastern boundary. Tr. 1-88 When queried as to where, or to whom he would go if he wanted to ascertain precisely where the eastern boundary was located, Ranger Mihata answered that he would go to the Alaska Fish and Game. When asked if he had contacted the Alaska Fish and Game, he answered that he had not. Tr. 1-88 When asked if anyone at Alaska Fish and Game had determined that the subject lake was inside or outside the boundary line, Ranger Mihata replied, "No". Tr 1-89 In other words, rather than go to the source of authority for instruction in the matter, the prosecution relied solely on federal agents to construe a state regulation, an action clearly outside the scope of their authority. Under the circumstances, there is insufficient authoritative evidence to eliminate reasonable doubt, or to sustain the-

Mr. Corning's testimony that he believed that the unnamed lake was west of where Sapun Creek enters the Noatak River was nothing more than conjecture. Mr. Corning testified under cross examination that he did not know where the ending boundary of the corridor was located and therefore he was not a hundred percent confident that the hunting party was inside the restricted area. Tr. 1-37 The prosecution failed to produce any authoritative evidence to support Mr. Corning's belief.

The prosecutions argument regarding true north versus magnetic north are without merit because federal agents, like federal courts lack the authority to construe state statutes and/or state regulations. The fact that the Alaska regulation is without direction as to whether or not true north or magnetic north is the standard of measurement the State wishes to employ simply underscores the inadequacy of the

regulation.

### b. Exousia has every right to challenge the validity of the state regulation

Prosecutions argument that Exousia is not in a position to challenge the validity of the state regulation based on the U.S. Supreme Court's holding that one who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others[3] is without merit. Since the prosecution has failed to provide any authoritative evidence establishing the eastern boundary of the CUA, it cannot be established beyond a reasonable doubt that the lake in question was actually located within the restricted area, or that Exousia's actions were clearly prohibited. Therefore Exousia's actions do not fall under purview of the cases cited by the government.

The prosecution's argument regarding the rule of lenity are equally unpersuasive. In *U.S. v. Wyatt,* 408 F.3d 1257 (9th Cir. 2005) the 9th Circuit Court of Appeals opined:

> "Under the rule of lenity, when a criminal statute is ambiguous, we interpret the statute in favor of the defendant. **However, it applies only when, after seizing everything from which aid can be derived, we can make no more than a guess as to what Congress intended."** *United States v. Phillips,* 367 F.3d 846, 857 n. 39 (9th Cir. 2004)

As stated previously, the regulation in question gives only one point of reference on the ten mile wide eastern boundary of the corridor, which point itself is in question, and remains silent on the corresponding location of the far eastern boundary. More importantly, the State offers two maps delineating two distinct and conflicting angles at

---

[3] *Hoffman Estates, Inc. v. The Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed. 2d 362 (1982); *Parker v. Levy,* 417 U.S. 733, 755, 94 S.Ct. 2547, 41 L.Ed. 2d 439 (1974)

6

which the boundary intercepts the Noatak River. One can only guess as to what the State intended and the regulation and therefore the rule of lenity is indeed applicable.

### c. **The cases and regulations cited by Exousia fully support the position that the regulation in question is constitutionally deficient**

The Exousia was fully licensed by both the State of Alaska and the National Park System to transport hunters, their equipment, and big game. Exousia's actions can only be considered illegal if the government proved beyond a reasonable doubt that Exousia was performing within the boundaries of the CUA. The prosecution provided absolutely no authoritative evidence establishing the eastern boundary of the restricted area. Absent such proof, the Exousia's conviction cannot stand.

On the other hand, the cases and regulations cited by the Exousia established state court constructions of the issues in this matter and such construction must be deferred to by the federal court. Prosecution's allegations to the contrary are without merit.

## CONCLUSION

Under the ruling of the United States Supreme Court in *United States v. Thirty-Seven Photographs*, supra, a federal court does not have jurisdiction to authoritatively construe a state statute. Federal agents likewise lack the authority to construe a state statute and/or regulation. The prosecution produced no witnesses from the State of Alaska to testify concerning the location of the mouth of Sapun Creek nor to testify as to the exact location of the entire eastern boundary. Two divergent illustrations on the State maps depicting the eastern boundary show contradictory angles of the boundary and leave the door open to at least two equally logical interpretations. Minus definitive

proof from an authorized source, which the prosecution failed to produce, the evidence in this case is insufficient to meet the standards of proof required to eliminate reasonable doubt. Under precedent of the case law cited by Exousia in both the Opening Brief and this Reply, Exousias conviction cannot stand.

**DATED** this 22nd day of May, 2006.

_C. A. Winegarden_
Charles Winegarden AK Bar # 8506089
Counsel for Defendant

8